In re Joseph & Marion **FARMER**, Debtors.

**Old Republic Insurance Co., Robert D. Swindle, II, & Roadway Express, Inc. Movants,**

v.

**Joseph & Marion Farmer, Respondents.**

No. 98–71322 JTL.

United States Bankruptcy Court, M.D. Georgia, Valdosta Division.

April 18, 2005.

85. Prejudgment interest is calculated through April 4, 2004.

Leon S. Jones, Attorney at Law, Atlanta, GA, for Plaintiff or Petitioner.

Orson Woodall, Attorney at Law, Valdosta, GA, for Defendant or Respondent.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On October 27, 2004 the court held a hearing on a Motion by Old Republic Insurance Co., Robert Darrell Swindle, II, and Roadway Express, Inc. ("Movants")to Reopen Joseph and Marion Farmer's ("Debtors") Chapter 13 case. At the conclusion of the hearing, the court took the matter under advisement. After considering the parties' briefs and oral arguments, as well as applicable statutory and case law, the court makes the following findings of fact and conclusions of law.

## PROCEDURAL HISTORY

The Debtors filed a Chapter 13 case on November 2, 1998, which was confirmed on January 19, 1999. The Debtors' case was originally closed December 10, 2003. On July 1, 2004, the Debtors moved to reopen the case in order to add a post-petition personal injury claim for an accident which

occurred on September, 2003. The Motion to Reopen was granted July 28, 2004. The schedules were amended and the case was again closed on August 13, 2004. On September 9, 2004, the Movants filed a Motion to Re-open the case in order to contest the prior reopening and move to strike the amended schedules. The hearing on the motion was held on October 27, 2004 and the court took the matter under advisement to resolve two issues; (1) whether the Movants have standing to reopen the case, and (2) whether the Debtors have a duty to amend their Bankruptcy Schedules to include a post-petition cause of action.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

## I. WHETHER THE MOVANTS HAVE STANDING TO REOPEN THE CASE

A motion to reopen a bankruptcy case is governed by 11 U.S.C. § 350(b) and Federal Rule of Bankruptcy Procedure 5010. "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "A case may be reopened on a motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed.R.Bankr.P. 5010.

In the present case, it is unclear whether the Movants have standing to bring this motion as a party in interest under Rule 5010. The Movants are not creditors and do not appear to have a direct pecuniary interest in the proceedings, which would comport with the traditional notions of a "party in interest." *But see In re Tarrer,* 273 B.R. 724, 731 (Bankr.M.D.Ga.2001) ("[N]otwithstanding the fact that the Ob-jecting Parties are neither debtors, creditors, or trustees in a bankruptcy case, their interest in avoiding a long and potentially expensive litigation on the merits is a sufficiently concrete interest to support a finding that they are parties in interest for the purpose of objecting to the Debtors' motion to reopen.") In addition, the Movants did file a notice of appearance and were not served with the Debtors' Motion to Re–Open their Chapter 13 case.

Without deciding whether all defendants in post-petition lawsuits have standing to re-open a case, the court will assume that the Movants do indeed have standing to bring this motion because the Movants here filed a notice of appearance and were not served with the motion to reopen.

## II. WHETHER THE DEBTORS HAVE A DUTY TO AMEND THEIR BANKRUPTCY SCHEDULES TO INCLUDE A POST–PETITION CAUSE OF ACTION

### A. *Whether Judicial Estoppel Applies in a Post–Petition, Post–Confirmation Case.*

The Movants rely on *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.2002), for the proposition that the Debtors had a continuing obligation to amend their bankruptcy schedules and are thus judicially estopped from pursing such undisclosed claims. In *Burnes,* the debtor filed for bankruptcy under Chapter 13, and subsequently filed an employment discrimination suit. *Id.* at 1284. The court did in fact find the debtor had a continuing obligation to amend his schedules to include the claim and was thus judicially estopped from pursuing monetary damages for undisclosed claims. *Id.* at 1286. However, *Burnes* is distinguishable from this case

for two reasons. First, the debtor in *Burnes* had converted from a Chapter 13 case to a Chapter 7 case ten months after filing the employment discrimination suit. Second, it is unclear in *Burnes* whether the cause of action arose before or after the debtor originally filed for bankruptcy.

In *Burnes*, the debtor filed for bankruptcy under Chapter 13. He did not list on his forms that he was participating in any lawsuits. Six months after filing for bankruptcy, the debtor filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Almost a year after filing the complaint, the debtor filed a lawsuit against his employer. It is unclear when the incident that gave rise to the complaint and subsequent lawsuit occurred. Then, approximately ten months after filing the lawsuit, the debtor converted his case from a Chapter 13 to a Chapter 7. In order to convert, the debtor was required to file amended or updated schedules. The debtor did not add the pending lawsuit as a possible asset of the bankruptcy estate in his Chapter 7 schedules. The debtor received a "no asset" discharge a few months after the conversion to Chapter 7. The defendant in the lawsuit moved for summary judgment in the debtor's case asserting judicial estoppel because he had not disclosed the claims in bankruptcy court. *Burnes*, 291 F.3d at 1284. The court's analysis focused on the intent of the debtor to manipulate the system. *Id.* at 1287–88. The court found the debtor intentionally did not disclose this asset and stood to gain from this failure to disclose, so summary judgment was granted for defendant against the debtor's monetary claims. *Id.* at 1288–89.

The Farmers' situation is different from *Burnes*. First, it is clear in the present case that the incident which gave rise to the subsequent lawsuit occurred well after filing, and almost simultaneously with the completion of the case. Second, the Debtors never converted their case, which would require updated schedules like the debtor in *Burnes*. The Debtors filed their case in November of 1998. It was confirmed in January of 1999, and subsequently modified in August of 2001. In August of 2003, the Debtors received a letter from the Trustee indicating that the case was completed and they were no longer required to send payments. A month later, in September of 2003, the accident occurred. The case was discharged in November of that year and the Final Decree was entered in December. The Debtors filed the lawsuit in April of 2004.

The Debtors in the present case, unlike *Burnes*, had completed their case before the cause of action arose. Further, in *Burnes* the debtor had filed the lawsuit during the pendency of the bankruptcy, while the Debtors in the present case did not file the lawsuit until well after their bankruptcy was discharged. In addition, the Farmers never converted their case, like the debtor in *Burnes*, which requires a debtor to submit updated or amended schedules. As the *Burnes* court noted, the debtor's failure to disclose the lawsuit when he converted made it "clear that [the debtor] had knowledge of his claims during the bankruptcy proceedings." *Id.* at 1288. There is no such clear evidence that the Debtor in the present case intentionally failed to disclose a potential asset to the bankruptcy court. Further, the Farmers did not have the motive that the debtor in *Burnes* had because the claim was not property of the estate. *See infra* pp. 922–23.

The Movants also rely on *Wolfork v. Tackett*, 273 Ga. 328, 540 S.E.2d 611

(2001), for the proposition that judicial estoppel applies when the debtor fails to disclose a cause of action or a potential cause of action. The *Wolfork* decision was limited in *Chicon v. Carter*, 258 Ga.App. 164, 573 S.E.2d 413 (2003). The Georgia Court of Appeals distinguished *Wolfork* from *Chicon* because in *Chicon* "the injury itself and the action occurred after confirmation of a plan providing for payment in full of all creditors, and the debtors were discharged after successfully completing their plan." *Chicon*, 258 Ga.App. at 164, 573 S.E.2d at 414. The present case is analogous to *Chicon* rather than *Wolfork* because the injury occurred after confirmation and the Debtors were discharged after completing their plan.

*Chicon* also found application of the doctrine of judicial estoppel did not apply because the doctrine requires inconsistent positions. *Chicon*, 258 Ga.App. at 166, 573 S.E.2d at 415. *See also In re Phelps*, No. 02–52995, slip op. at 5 (Bankr.M.D.Ga. Mar. 29, 2005) ("Judicial estoppel generally requires the assertion of inconsistent positions in separate legal proceedings."). In *Chicon*, the debtors had attempted to re-open their bankruptcy case in order to amend their schedules and add the tort claim at issue. The bankruptcy court denied the motion. The Georgia Court of Appeals determined that this was not a case of judicial estoppel because the debtors had never taken inconsistent positions. Rather, they had attempted to amend their petition and it was the bankruptcy court which denied their motion. *Chicon*, 258 Ga.App. at 164–66, 573 S.E.2d at 414–15.

In the present case, the Debtors also moved to re-open their case, but were allowed to do so by the bankruptcy court. Like the debtor in *Chicon*, the Debtors have not taken inconsistent positions and therefore judicial estoppel does not apply. The cause of action in present case clearly arose after the completion of the plan and the lawsuit was not filed until after the case had been discharged. This is different from the *Burnes* and *Wolfork* cases, where the causes of action arose before the completion of the plans and the lawsuits were filed during the pendency of the bankruptcies. Further, unlike *Burnes*, there was no subsequent conversion requiring a willful omission of a lawsuit that had been filed in updated schedules. Rather, this case is closer to *Chicon*, because the injury and the action occurred after confirmation, and the Debtors were discharged after completing their plan. Further, under *Chicon* the doctrine of judicial estoppel does not apply in this case because the Debtors have not taken contradicting positions.

### B. Whether the Cause of Action is Property of the Estate

In *Chicon v. Carter*, the bankruptcy court determined there was no necessity to amend and therefore denied the debtors' motion to reopen their case in order to add a post-petition cause of action. *Id.* at 164–65, 573 S.E.2d at 414. The bankruptcy court concluded that the claim "never became a part of the property of the estate because by the time it arose, the Carters' plan was already confirmed and under relevant Eleventh Circuit authority any additional property not necessary for the maintenance of the plan became property of the debtors, not the bankruptcy estate." *Chicon*, 258 Ga.App. at 165, 573 S.E.2d at 414 (citing *In re Carter*, 258 B.R. 526 (Bankr. S.D.Ga.2001)).

The relevant Eleventh Circuit authority relied on by the *Carter* bankruptcy court was *Telfair v. First Union Mortgage*

*Corp.,* 216 F.3d 1333 (11th Cir.2000). *Carter,* 258 B.R. at 527. In *Telfair,* the Eleventh Circuit addressed the tension between the Bankruptcy Code sections 1327(b) and 1306 as to whether assets acquired post-petition belong to the debtor or the bankruptcy estate. While 11 U.S.C. § 1327(b) vests all of the property of the estate in the debtor at the time of confirmation, 11 U.S.C. § 1306 states that assets that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted is property of the estate. *Telfair,* 216 F.3d at 1339-40. In order to resolve this conflict, the court in *Telfair* adopted the "estate transformation" approach as the law for the Eleventh Circuit. *Id.* at 1340. Under this model, § 1327(b) and § 1306 are read "to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Id.* (citing *In re Heath,* 115 F.3d 521, 524 (7th Cir.1997)).

Under *Telfair,* the cause of action in the present case is not an asset of the bankruptcy estate. At confirmation there was no asset, because the cause of action did not arise until almost five years later. The asset was clearly not necessary to fulfill the Farmer's plan, as the case was completed a month before the accident.

In addition, the time had passed to modify the plan when the accident occurred, because the payments under the plan were complete. "At any time after confirmation of the plan *but before the completion of payments* under such a plan, the plan may be modified." 11 U.S.C § 1329(a) (emphasis added). The Farmers were notified by the Trustee a month prior to the accident that payments under their plan were completed.

### CONCLUSION

The court finds that judicial estoppel is not applicable in this case because the Debtors have not taken inconsistent positions in regards to reopening the case and because the timing of the injury and the action. Further, the cause of action is not property of the bankruptcy estate. For these reasons, Old Republic Insurance Co., Robert Darrell Swindle, II, and Roadway Express, Inc.'s Motion to Reopen Joseph and Marion Farmer's Chapter 13 Case is Denied.